Siriphen PANRIT, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–9554.

United States Court of Appeals, Tenth Circuit.

March 21, 1994.

Rehearing Denied May 23, 1994.

Philip M. Alterman and Beverly W. Oserow, Denver, CO, for petitioner.

Frank W. Hunger, Acting Asst. Atty. Gen., Civil Div.; David J. Kline, Asst. Director; and Carl H. McIntyre, Jr., Atty., Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, DC, for respondent.

Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

Siriphen Panrit petitions for review of a final order of deportation, as authorized under § 106 of the Immigration and Nationality Act, 8 U.S.C. § 1105a. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

The Board of Immigration Appeals summarily affirmed the conclusion of the immigration judge that Ms. Panrit did not qualify for suspension of deportation under 8 U.S.C. § 1254. Ms. Panrit argues that the BIA erred in its determination that the immigration judge adequately and correctly addressed the issue whether Ms. Panrit met the "extreme hardship" requirement of § 1254(a), and that the BIA abused its discretion by issuing a summary affirmance in lieu of independently analyzing her claims.

■ We first consider whether the BIA abused its discretion by issuing a summary order adopting and affirming the immigration judge's decision rather than independently analyzing the evidence. The BIA Order read in pertinent part as follows:

> PER CURIAM. The appeal is dismissed. We have reviewed the record of proceedings, the immigration judge's decision, and the respondent's contentions on appeal. As we find that the immigration judge adequately and correctly addressed the issues raised on appeal, his decision is affirmed based upon and for the reasons set forth in that decision.

(Pet.Br.Ex. A at 2.) We have previously held that the BIA "has no duty to write an exegesis on every contention," and that all that is required is that the BIA consider the issues and announce its decision in terms sufficient to enable us, as a reviewing court, to perceive that it has heard and considered the arguments rather than merely reacted. *Becerra–Jiminez v. INS*, 829 F.2d 996, 1000 (10th Cir.1987) (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1143 (5th Cir.1984)).

■ However, despite the fact that we review the Board's determination of "extreme hardship" under the abuse of discretion standard, which provides only limited room for substantive review, "we may still scrutinize the [Board's] decision for procedural regularity." *Turri v. INS*, 997 F.2d 1306, 1309 (10th Cir.1993) (quoting *Hernandez–Cordero v. INS*, 819 F.2d 558, 563 (5th Cir.1987)). That procedural regularity includes the requirement that the Board actually consider all of the evidence cited by the petitioner in support of the application for

suspension of deportation. *Turri*, 997 F.2d at 1309; *Becerra–Jiminez*, 829 F.2d at 1000.

In *Turri*, we held that the BIA's decision reciting a "laundry list" of considerations and stating that the Board had "carefully reviewed the record in this case, and ... concluded that all the factors presented, considered in their entirety, do not constitute extreme hardship within the meaning of the Act" constituted an insufficient articulation of the Board's reasoning to enable us to perform our review. *Turri*, 997 F.2d at 1309. We held that such reasoning "free[d] the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion." *Id.* at 1310 (quoting *Santana–Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981)).

Nevertheless, we believe that *Turri* is distinguishable from the instant case. In *Turri*, there was no mention of the decision of the immigration judge, and we had no indication whether that decision adequately addressed Ms. Turri's claims. Thus, in *Turri*, we as a reviewing court had no way to know whether anyone at all had actually considered Ms. Turri's claims in a sufficient manner. By contrast, in this case we have before us the decision of the immigration judge, which thoroughly reviewed each of Ms. Panrit's claims. We would be hard-pressed to conclude that the immigration judge's decision here did not adequately address Ms. Panrit's reasoning. Likewise, if the BIA had actually written its decision in the form used by the immigration judge, we would be unable to conclude that the Board had not adequately articulated its reasoning. In this era of computerized word processing, we have no doubt that, were we to hold that the Board's adoption of the immigration judge's decision were inadequate, that holding could be easily circumvented and would therefore contribute nothing in the way of increasing the adequacy of the review process. We therefore hold that where the Board explicitly recites that it has reviewed the record and the immigration judge's decision and that it is content to rest its decision on the immigration judge's reasoning, adoption of the immigration judge's decision does not present any difficulty in terms of the sufficiency of the Board's articulation of its reasoning.

In so holding, however, we do not grant unrestricted license to the Board automatically to summarily adopt immigration judges' decisions without examining those decisions to ensure that all of the factors urged by the alien were in fact fully considered by the immigration judge. To do so would effectively remove the Board as a separate reviewing body and would present the same difficulty with regard to freeing the Board of its obligations to which we alluded in *Turri*.

Accordingly, we note that in future cases in which the Board adopts the immigration judge's decision rather than engaging in an independent analysis, we will strictly hold the Board to the reasoning of the immigration judge. The Board's recitation of a laundry list of other factors will add nothing to the express reasoning of the immigration judge, and in cases where we decide that the immigration judge's decision was not adequate, this court will not engage in an independent review of the record in search of factors to support that decision. To be perfectly clear: If the Board chooses to rely on the express reasoning of the immigration judge in denying suspension of deportation, that reasoning will be the sole basis for our review, and if we find that reasoning inadequate, we will grant the petition for review and will reverse the holding of the immigration judge.

Having concluded that there was no abuse of discretion in the Board's adoption and summary affirmation of the immigration judge's decision in this case, we now turn to Ms. Panrit's argument that the BIA erred in its conclusion that the immigration judge adequately and correctly addressed the issue whether Ms. Panrit met the "extreme hardship" requirement.

The petitioner has the burden of proving her eligibility for suspension of deportation. *Turri*, 997 F.2d at 1308. Section 1254(a) sets forth three requirements for eligibility. The petitioner must demonstrate seven years' continuous residence, good moral character, and that deportation would result in "excep-

tional and extremely unusual hardship to the alien or to [her] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(2). The first two factors are not at issue in this case. We review the BIA's conclusion on the third factor for an abuse of discretion. *Turri*, 997 F.2d at 1308.

Ms. Panrit argues that she would suffer financial hardship if she returns to Thailand, as she has no special skills and has no job waiting for her. She also argues that she is the sole financial support for her mother, who lives in Thailand and who has serious medical problems that require that financial support. Ms. Panrit argues that she will suffer severe emotional harm if she is unable to continue to provide her mother with money. Furthermore, Ms. Panrit points to her position in and contribution to her community, factors which we have held are relevant to a determination of extreme hardship. *See Turri*, 997 F.2d at 1310. Ms. Panrit claims that the combination of these factors constitutes "extreme hardship" for purposes of § 1254.

█ The immigration judge carefully considered each of the factors pressed by Ms. Panrit and concluded that "there is no extreme hardship, looking at all of these factors cumulatively. If the only consideration were a matter of equity and her contribution to society, the case would be granted because she has a very good record in this country. But unfortunately, she cannot meet this requirement." (R. Vol. I Doc. VII at 3.) The attorney general has the power to construe the "extreme hardship" requirement narrowly. *INS v. Jong Ha Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981); *Michelson v. INS*, 897 F.2d 465, 469 (10th Cir.1990). In light of this power and the careful consideration given by the immigration judge to each of Ms. Panrit's arguments, we cannot conclude that the immigration judge's determination in this case constituted an abuse of discretion.

Accordingly, Ms. Panrit's petition for review is hereby DENIED.